UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAN MEDINA,

Plaintiff,

v.

Case No. 1:14-cv-64
Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which granted in part his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on August 20, 1965 (AR 309).[1] He alleged a disability onset date of January 7, 2009 (AR 309). Plaintiff completed a GED, and had additional training in secretarial work and in taking care of the elderly (AR 307). He had previous employment as a utilities/cleaning supervisor for a hotel service, a security supervisor, a self-employed merchandiser and a delivery person (AR 302). He identified his disabling conditions as seizures, memory loss, depression, "stiffness of body", loss of mobility in right arm as of April 7, 2009, "mouth was frozen in a distorted position for weeks," mind goes out, excess salivating, "whole body freezes," and asthma (AR 301).

[1] Citations to the administrative record will be referenced as (AR "page #").

Plaintiff's claim for benefits was denied and he sought administrative review. The administrative law judge (ALJ) entered a partially favorable amended decision on July 27, 2012, finding that plaintiff was disabled as of September 1, 2011 (AR 10-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner. Plaintiff filed this action seeking review of this decision.

After plaintiff filed his initial brief on appeal, defendant moved for a remand asking that "the entire decision rendered by the ALJ on July 27, 2012 be vacated, and that the matter be remanded to the ALJ for further administrative proceedings." Defendant's Motion for Sentence Four Remand (docket no. 17). The Court characterized the motion as follows:

> Defendant contends that the ALJ's partially favorable amended decision should be reversed, remanded and vacated on the following ground, "[b]ecause Listing 11.02 requires compliance with prescribed anti-convulsant treatment as an element essential to meeting the listing, medical expert testimony concerning this issue was essential." Defendant's Brief at p. 4 [docket no. 17-1]. For his part, plaintiff "does not object to the remand," but "does, however, object to the suggested language that the entire case will be reviewed, including the partially favorable portion of the decision." Plaintiff's Response at p. 1 (docket no. 18). In short, plaintiff wants to keep the award of benefits intact, and limit any remand to consideration of plaintiff's condition between January 7, 2009 (the alleged onset date) and August 31, 2011 (the day before plaintiff was determined to be disabled under Listing 11.02). *Id.* at p. 2.

Order (docket no. 19 at p. ID# 971). The Court denied defendant's motion because there was no basis to reverse and remand this matter for the reason proffered by defendant, i.e., contrary to defendant's contention, medical expert testimony was not "essential" to support the ALJ's finding that as of September 1, 2011, plaintiff met the requirements of Listing 11.02.. *Id.* This matter is now ripe for review.

**I. LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

### A. Steps 1 and 2

At the first step of the sequential process, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 7, 2009 and that he met the insured status requirements under the Act through September 30, 2011 (AR 13). At the second step, the ALJ found that plaintiff had severe impairments of: a seizure disorder (epileptic and/or non-epileptic); depression; an adjustment disorder; and status post right shoulder surgery and left shoulder dislocation (AR 13).

### B. Steps 3, 4 and 5 (prior to September 1, 2011)

At the third step, the ALJ found that prior to September 1, 2011, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 13).

At the fourth step, the ALJ found that prior to September 1, 2011, plaintiff had the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant had no exertional limitations. He was occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and was to never climb ladders, ropes, or scaffolds. He was to avoid all exposure to workplace hazards, such as unprotected heights and dangerous machinery. He was limited to occasional bilateral overhead work. In addition, he was capable of performing simple type work in two-hour periods throughout an eight hour workday with no strict time or production quotas and would do best in a job performed away from the public.

(AR 14). The ALJ also found that plaintiff was unable to perform any past relevant work since his alleged onset date (AR 20).

At the fifth step, the ALJ determined that prior to September 1, 2011, there were unskilled, light jobs that existed in significant numbers in the national economy that he could perform (AR 20-21). Specifically, plaintiff could perform the following work in the regional economy (the Lower Peninsula of the State of Michigan): production inspecting (5,400 jobs); and cleaning jobs such as an office cleaner (approximately 15,000 jobs) (AR 20-21). Accordingly, the ALJ found that plaintiff was not disabled prior to September 1, 2011 (AR 21-23).

**C. Step 3 (beginning September 1, 2011)**

Beginning on September 1, 2011, the ALJ found that plaintiff had an impairment or combination of impairments that met the criteria of Listing11.02 (epilepsy) of 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 21). Accordingly, the ALJ found that plaintiff became disabled on that date and has continued to be disabled through July 27, 2012 (the date of the decision) (AR 22-23).

**III. Analysis**

Plaintiff raised three issues on appeal.

**A. The ALJ committed reversible error by finding that plaintiff was disabled as of a date which did not coincide with any medical evidence.**

**B. The ALJ committed reversible evidence by not properly weighing the evidence.**

**C. The ALJ committed reversible error by making improper credibility findings.**

Plaintiff contends that his disability commenced when he suffered a stroke in January 2009. Plaintiff's Brief (docket no. 13 at p. ID# 944). After that date, plaintiff persistently reported seizures and other impairments. *Id.* Defendant concedes that the ALJ's basis for finding that plaintiff's condition worsened on September 1, 2011 "was not clearly explained by the ALJ and that

no medical record specifically demonstrated a worsening around such time." Defendant's Brief (docket no. 20 at pp. ID## 982-83). Now, defendant seeks a remand "with the provision that further action on remand be strictly limited to consideration of the period prior to September 1, 2011, consistent with this court's prior order finding not basis for readjudication of the period after such date." *Id.* at p. ID# 982. On remand, defendants would ask the Appeals Council to direct the ALJ: (1) to further develop the record for the entire period at issue and obtain any relevant evidence, particularly with regard to plaintiff's history of seizure activity; (2) to further consider the nature and severity of plaintiff's medically determinable impairments; (3) to reassess whether plaintiff's impairments meet or equal the requirements of any Listing identified in the Listings of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) to further consider and weigh all of the opinion evidence of record; (5) to reassess plaintiff's maximum residual functional capacity with specific reference to the evidence of record that supports the assessed limitations; and, (6) to obtain supplemental vocational expert testimony if warranted by the expanded record. *Id.* "Additionally, the ALJ would be instructed to obtain evidence from a medical expert, including an analysis of plaintiff's impairments in view of the requirements of Listing 11.02, and if necessary, an assessment of plaintiff's functional limitations and any other opinion evidence." *Id.*

The core issue in this action is whether plaintiff met the requirements of Listing 11.02 prior to September 1, 2011. At the third step of the sequential evaluation, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). The "Listing of Impairments" is set forth at 20 C.F.R. § 404, Subpt. P, Appendix 1. The listing "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful

activity." 20 C.F.R. §§ 404.1525; 416.925. In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Evans*, 820 F.2d at 164. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

To meet the requirements of Listing 11.02, a claimant must establish the following elements:

> 11.02 Epilepsy -- convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

Listing 11.02, 20 C.F.R. Part 404, Subpart P, Appx. 1.

Additional criteria for Listing 11.02 is set forth in Listing 11.00A:

> Epilepsy. In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. At least one detailed description of a typical seizure is required. Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available.
>
> Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must be also assessed. Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

Listing 11.00A., 20 C.F.R. Part 404, Subpart P, Appx. 1.

Here, the ALJ found that plaintiff met the requirements of Listing 11.02 as of September 1, 2011 (AR 21-22). In her previous motion to remand, defendant took the position that the ALJ erred, but would not concede that plaintiff was disabled at any point in time. Now, defendant takes the unusual position of conceding that the ALJ erred, that plaintiff was disabled as of September 1, 2011, and that this matter should be reversed and remanded pursuant to sentence

four of 42 U.S.C. § 405(g) "to allow further development on the issue of plaintiff's alleged disability prior to September 1, 2011." Defendant's Brief (docket no. 20 at p. ID# 981, 984). Based on defendant's concession, the issue is not *whether* plaintiff was disabled, but *when* the disability occurred. The relevant time frame for determining plaintiff's disability lies between January 7, 2009 (the alleged onset date) and September 1, 2011 (the date when plaintiff was found disabled under Listing 11.02). In his request for relief, plaintiff asks for an award of benefits or a sentence four remand. Both plaintiff and defendant agree that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), that plaintiff became disabled between the dates of January 7, 2009 and September 1, 2011, and that the sole issue on remand is to determine the date on which plaintiff met the requirements of Listing 11.02.

**IV. CONCLUSION**

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). It is uncontested that plaintiff became disabled on September 1, 2011. On remand, the Commissioner shall determine if plaintiff met the requirements of Listing 11.02 at any time during a period prior to that date, but not before January 7, 2009.

Dated: March 27, 2015

/s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge